# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NAKIA COVINGTON,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          1:18CV693
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,[1]       )
                                          )
                    Defendant.            )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Nakia Covington, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. ___")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of June 1, 2012. (Tr. 285-97.)[2] Upon denial of those claims initially (Tr. 79-114, 151-60) and on reconsideration (Tr. 115-50, 168-85), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 186-87). Plaintiff, his attorney, witness Cherita Allsbrook, and a vocational expert ("VE") attended the hearing. (Tr. 36-78.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 284), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] met the insured status requirements of the . . . Act through December 31, 2015.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease, intellectual learning disability and specific learning disorders, major depressive disorder, generalized anxiety disorder, and alcohol abuse.

---

[2] Although not a part of the record, Plaintiff filed between four and six prior applications for DIB and SSI from 2002 to 2013, with the last denial occurring on October 21, 2013. (See Tr. 80, 97, 116, 133, 298.) As a result, the ALJ found that the relevant period in this case began on October 22, 2013, the date after the last unfavorable decision. (See Tr. 11.)

. . .

4. [Plaintiff] does not have an impairment or
combination of impairments that meets or medically equals
the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional
capacity to perform light work . . ., except [he] can
occasionally crouch and crawl. [Plaintiff] is limited to
simple, routine, repetitive tasks. [Plaintiff] requires
few if any workplace changes and no fast paced production
rate work, and [Plaintiff] can have only occasional
interaction with the general public.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from June 1, 2012, through the
date of this decision.

(Tr. 14-28 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely

limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of
(continued...)

## B.  Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1)  "[t]he ALJ erred by refusing to exhibit, consider and discuss Plaintiff's school records and [consultative examinations ('CEs')] in [the ALJ's] decision" (Docket Entry 12 at 4 (bold font and single-spacing omitted));

2)  "[t]he ALJ erred by failing to factor Plaintiff's functional illiteracy into his ability to work" (id. at 8 (bold font and single-spacing omitted));

3)  "[t]he ALJ improperly analyzed the determination of the [North Carolina Department of Health and Human Services ('NCDHHS')] finding Plaintiff eligible for [Aid to the Disabled - Medical Assistance ('MAD')]" (id. at 9 (bold font and single-spacing omitted));

4)  "[t]he ALJ erred in her evaluation of the [] opinion [of medical expert ('ME') Dr. Richard S. Gross]" (id. at 12 (bold font and single-spacing omitted)); and

5)  "[r]emand is required because at the time [the ALJ's] decision was issued, [her] appointment did not comply with the

---

[6] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Appointments Clause" (id. at 17 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 15 at 6-27.)

### 1. **Evidence from Plaintiff's Prior Claims**

Plaintiff first contends that "[t]he ALJ erred by refusing to exhibit, consider and discuss Plaintiff's school records and CEs in [the ALJ's] decision."  (Docket Entry 12 at 4 (bold font and single-spacing omitted).)  According to Plaintiff, his attorney at the hearing requested that the ALJ transfer Plaintiff's school records and CEs from his prior claims for DIB and SSI "to his current file so that they could be considered when assessing Listing 12.05 for intellectual disability[, ] as well as for assessing his mental functioning generally." (Id. at 5 (citing Tr. 76-77).)  Plaintiff deems the ALJ's refusal to exhibit the evidence in question a "serious error," because "the current iteration of Listing 12.05B" requires evidence that Plaintiff's intellectual disability began prior to his "'attainment of age 22'" (id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B.3)), and "because the ALJ assumed that [Plaintiff] had the equivalent of a high school education and based her [s]tep [five] finding on the results of a hypothetical posed to the VE which assumed a high school education" (id. at 6 (citing Tr. 27-28, 62) (internal citation omitted)).  For the following reasons, Plaintiff's

contentions regarding his school records have merit and warrant remand.

Plaintiff has cited five prior CEs containing Plaintiff's IQ testing results: 1) Vocational Rehabilitation ("VR") assessment of January 24, 2002 (see Tr. 86), 2) CE by Terry T. Warner, M.S., on March 8, 2006 (see id.), 3) CE by Warner on July 1, 2009 (see id.), 4) CE by Warner on July 18, 2013 (see id.), and 5) VR assessment by Richard H. Willis, M.A., L.P.A., on November 26, 2013 (see Tr. 530-33). (Docket Entry 12 at 7 (citing Tr. 371).)[7] The ALJ did not err by refusing to exhibit the CEs in question. As Plaintiff acknowledges (see id.), the state agency psychological consultants at the initial and reconsideration levels of review summarized the findings, IQ scores, and conclusions contained in the CEs at issue (see Tr. 80-86, 89, 97-103, 106, 118-25, 135-42). Further, the ALJ assessed and weighed the state agency psychological consultants' opinions (see Tr. 24), and Plaintiff has not attacked the ALJ's assessment of those opinions (see Docket Entry 12). Moreover, the record already contains the Willis VR assessment on November 26, 2013 (the only examination within the relevant period in this case which began on October 22, 2013, the day after the last unfavorable decision in Plaintiff's most recent claim for benefits (see Tr.

_____

[7] As Plaintiff pointed out, Warner diagnosed Plaintiff with "mild mental retardation" following all three of Warner's CEs (Docket Entry 12 at 7 (citing Tr. 86)) and opined after the 2006 and 2013 examinations "that [Plaintiff] would be 'much slower' than a normal person at completing simple tasks" (id. (referencing Tr. 81, 83)).

10

11)) (see Tr. 530-33), the ALJ discussed and weighed that examination (see Tr. 24), and Plaintiff has not challenged the ALJ's determination in that regard (see Docket Entry 12).

In contrast, the Court should find that the ALJ erred by refusing to exhibit or consider Plaintiff's school records. Those records remain relevant to resolve the issue of whether Plaintiff "ha[d] at least a high school education" as found by the ALJ. (Tr. 27; see also Tr. 26 (noting that Plaintiff "received a certificate of high school equivalency" (emphasis added)).) Although Plaintiff testified that he "finish[ed]" high school (Tr. 45; see also Tr. 322 (notation in Disability Report that Plaintiff "completed" 12th grade in 1993)), Plaintiff has also offered evidence that he received a certificate of completion or attendance in lieu of a high school diploma because he failed the North Carolina competency test (see Tr. 371; see also Tr. 86, 103 (initial-level state agency psychological consultant's observation that Plaintiff's school records show he received a "certificate for 12 y[ea]rs of attendance")). Plaintiff's school records would likely have resolved the current conflict in the evidence regarding Plaintiff's educational achievement and thus the ALJ erred by refusing to exhibit them. Finally, that error prejudiced Plaintiff, because had the ALJ found that Plaintiff possessed less than a high school education, i.e., deeming him either to have achieved only a "limited" education or to have qualified as "illiterate," the jobs

cited by the VE (see Tr. 63-64) (and adopted by the ALJ at step five (see Tr. 28)) may no longer have remained available to Plaintiff.

In short, the ALJ's failure to exhibit and expressly consider Plaintiff's school records constitutes prejudicial error and warrants remand.

## 2. Functional Illiteracy

Plaintiff next alleges that "[t]he ALJ erred by failing to factor Plaintiff's functional illiteracy into his ability to work." (Docket Entry 12 at 8 (bold font and single-spacing omitted).) The Court should find that the ALJ not only erroneously failed to exhibit Plaintiff's school records before ruling that Plaintiff possessed "at least a high school education" (Tr. 27), but also inadequately addressed other evidence of functional illiteracy in formulating the RFC (see Tr. 19-20). As discussed above, the record strongly suggests that Plaintiff did not, in fact, have "at least a high school education" (Tr. 27), but instead received a certificate of completion or attendance in lieu of a diploma because he failed the North Carolina competency test to qualify for a diploma. (See Tr. 371; see also Tr. 86, 103.) Moreover, the record contains voluminous evidence of Plaintiff's functional illiteracy. For example, Plaintiff's scores on the Wechsler Individual Achievement Test during Willis's VR assessment in November 2013 placed his reading and spelling skills at the first

grade level and his mathematical skills at the fourth grade level. (See Tr. 531.) Due to Plaintiff's difficulty with reading and writing, he appointed authorized representatives to assist him with his applications for Medicaid, DIB/SSI, and food stamps. (See Tr. 72.) Plaintiff's VR history documents an inability to maintain employment despite "intense job coaching" (Tr. 526), to fill out job applications (see Tr. 530), and to understand employers' instructions (see Tr. 526), as well as a past work history consisting of "temp[orary] labor lasting no more than [two] months" (see Tr. 530).

Furthermore, the above-described evidence harmonizes with Plaintiff's testimony, which included the following statements:

- when Plaintiff worked for a pallet company, he could not understand the paperwork (see Tr. 48);

- Plaintiff remained in special education throughout his time in school (see Tr. 53);

- Plaintiff needed help filling out job applications (see id.);

- Plaintiff could count bills but "g[o]t lost" counting change (see Tr. 54);

- Plaintiff never lived alone (see Tr. 55); and

- Plaintiff had difficulty understanding his duties at his past jobs and had to ask questions repeatedly (see Tr. 57).

Thus, the ALJ erred both by finding that Plaintiff possessed "at least a high school education" (Tr. 27) and by not addressing

Plaintiff's apparent functional illiteracy when formulating the RFC (see Tr. 19-20).

Moreover, those errors do not qualify as harmless under the circumstances of this case. Based on the ALJ's RFC (as incorporated into the dispositive hypothetical question), the VE assumed Plaintiff possessed "a high school education" (Tr. 62) and identified three jobs as available in significant numbers in the national economy, i.e., hand packer, sorter, and grader (see Tr. 63-64). The Dictionary of Occupational Titles ("DOT") classifies the hand packer job at Math Level 2, which requires the abilities to "[a]dd, subtract, multiply, and divide all units of measure," "[p]erform the four operations with like common and decimal fractions," "[c]ompute ratio, rate, and percent," "[d]raw and interpret bar graphs," and "p]erform arithmetic operations involving all American monetary units." DOT, No. 753.687-038 (Packing-Line Worker), 1991 WL 680354 (G.P.O. 4th ed. rev. 1991). Although the DOT rates the two remaining jobs at Math Level 1, even that level demands the abilities to "[a]dd and subtract two-digit numbers," "[m]ultiply and divide 10's and 100's by 2, 3, 4, 5," "[p]erform the four basic arithmetic operations with coins as part of a dollar," "[p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." DOT, No. 789.687-146 (Remnant Sorter), 1991 WL 681286; DOT, No. 529.687-186 (Sorter, Agricultural Produce), 1991 WL 674781. In addition, the

14

DOT places all three jobs at Language Level 1, which assumes the abilities to "[r]ecognize meaning of 2,500 (two- or three-syllable) words," [r]ead at rate of 95-120 words per minute," and "[c]ompare similarities and differences between words and between series of numbers." DOT, No. 753.687-038 (Packing-Line Worker), 1991 WL 680354; DOT, No. 789.687-146 (Remnant Sorter), 1991 WL 681286; DOT, No. 529.687-186 (Sorter, Agricultural Produce), 1991 WL 674781. Unless and until the ALJ makes a more thorough assessment of Plaintiff's educational/literacy level, and obtains vocational evidence informed by that assessment, the Court cannot determine if jobs in significant numbers remain available to Plaintiff.

In sum, the ALJ reversibly erred by finding that Plaintiff "had at least a high school education" and by failing to address Plaintiff's apparent functional illiteracy in formulating the RFC and articulating the dispositive hypothetical question to the VE.

### 3. NCDHHS Disability Determination

Plaintiff's third assignment of error asserts that "[t]he ALJ improperly analyzed the determination of the NCDHHS finding Plaintiff eligible for MAD." (Docket Entry 12 at 9 (bold font and single-spacing omitted).) In this regard, Plaintiff argues that the Fourth Circuit has held that, absent clear reasons for deviation, "'in making a disability determination, the [Commissioner] must give substantial weight to a NCDHHS disability decision.'" (Docket Entry 12 at 10-11 (internal quotation marks

15

omitted) (quoting Woods v. Berryhill, 888 F.3d 686, 692-93 (4th Cir. 2018) (in turn citing Bird v. Commissioner, 699 F.3d 337, 343 (4th Cir. 2012))).) Plaintiff challenges the ALJ's decision to afford "little weight" to the NCDHHS's decision in Plaintiff's case (Tr. 24) as violative of Woods, in that the ALJ did not provide "'persuasive, specific, valid reasons for doing so that are supported by the record'" (Docket Entry 12 at 12 (quoting Woods, 888 F.3d at 693)), but instead "assigned the NCDHHS determination little weight on the grounds that it was based upon its own rules and was not binding on an SSA disability decision" (id. at 10 (citing Tr. 24)). This argument has merit and warrants remand.

In Bird, the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating." Bird, 699 F.3d at 343. After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability

rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

<u>Bird</u>, 699 F.3d at 343 (emphasis added).

Following <u>Bird</u>, the Fourth Circuit further clarified "what an ALJ must do" to clearly demonstrate the appropriateness of a deviation from <u>Bird</u>'s substantial weight standard in a case involving an NCDHHS disability determination:

> We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to an NCDHHS disability decision, an ALJ must give "<u>persuasive, specific, valid reasons for doing so that are supported by the record.</u>"

<u>Woods</u>, 888 F.3d at 692 (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)) (emphasis added); <u>see also</u> Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") ("[E]vidence of a disability decision by another governmental . . . agency cannot be ignored and must be considered," and "the [ALJ] should explain the consideration given to these decisions in the notice of decision").[8]

---

[8] For claims filed on or after March 27, 2017, the SSA has rescinded SSR 06-03p and amended 20 C.F.R. §§ 404.1504 and 416.904. <u>See</u> 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulations state that the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about
(continued...)

In this case, the NCDHHS issued a disability determination on October 21, 2014, reversing the decision of the Stanly County Department of Social Services, and finding that Plaintiff met the requirements of Listing 12.05C (as those requirements existed in 2014) and qualified as disabled as of January 2014. (See Tr. 370-72.)[9] In so finding, the NCDHHS found as a fact that Plaintiff "[wa]s not working and ha[d] not worked at [substantial gainful activity] levels in the last 15 years" (Tr. 370), that Plaintiff "was noted to be in special education classes throughout school and received a Certificate of Completion due to failing the [North Carolina] Competency Test" (Tr. 371; see also id. (summarizing

[8] (...continued)
whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. §§ 404.1504, 416.904. In rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive." 82 Fed. Reg. 15263-01. Because Plaintiff filed his claims for DIB and SSI in 2014 (see Tr. 285-97), this Recommendation will apply SSR 06-03p and the prior versions of Sections 404.1504 and 416.904 to Plaintiff's contentions in his third assignment of error.

[9] Effective January 17, 2017, the Commissioner enacted substantial amendments to the listings for mental impairments, including Listing 12.05. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66137 (Sept. 26, 2016). The current iteration of Listing 12.05B, which applied at the time of the ALJ's decision, requires a showing of 1) "[s]ignificantly subaverage general intellectual functioning," 2) "[a] full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence," and 3) "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: [u]nderstand, remember, or apply information; [i]nteract with others; [c]oncentrate, persist, or maintain pace; [a]dapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B (2017) (subsection lettering and internal citations omitted). The version of Listing 12.05C in effect on the date of the NCDHHS's disability determination required a claimant to show 1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22," 2) "a valid verbal, performance, or full scale IQ of 60 through 70," and 3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05C (2014).

Plaintiff's IQ scores)).  The ALJ analyzed and weighed the NCDHHS's determination as follows:

> In October 2014, the [NCDHHS] determined that [Plaintiff] met the <u>disability requirement referenced in 20 [C.F.R. §] 416.920(d), Appendix 1, Listing 12.05C</u>.  The [ALJ] considered this evidence, including consideration of the current standard for Listing 12.05, and accords this opinion little weight as a decision by a governmental agency about a claimant's disability status is based upon its own rules, and is not binding on a Social Security disability decision.  Further, in this case the [ALJ] notes that [Plaintiff's] impairments do not cause significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself, as discussed above.

(Tr. 24 (internal citation omitted) (emphasis added).)

The ALJ's consideration of the NCDHHS's disability determination runs afoul of <u>Woods</u>.  To begin, the ALJ's statement that the NCDHHS's disability determination "is based upon its own rules" (<u>id.</u>) disregards the fact that the NCDHHS uses the Commissioner's standards for disability in its decisions (<u>see</u> Tr. 370-72), a fact which the ALJ acknowledged at the outset of her analysis of the NCDHHS's decision (<u>see</u> Tr. 24).  Further, in <u>Woods</u>, the Fourth Circuit expressly rejected the ALJ's discounting of an NCDHHS disability determination because the determination did not bind the Commissioner and because that agency utilized different disability standards, noting that such a "generic explanation, which could apply to every NCDHHS decision, [wa]s neither

persuasive nor specific." Woods, 888 F.3d at 693; see also Northen v. Colvin, No. 1:15CV445, 2016 WL 5956636, at *5 (M.D.N.C. Oct. 12, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 9, 2016) (Schroeder, J.) ("As this Court has previously explained, citing to different rules and different standards as a rationale to give less than substantial weight to a VA disability determination is not enough, because such a rationale would apply to every case, and thus cannot clearly demonstrate a reason for departing from the *Bird* presumption.").

Notwithstanding the ALJ's failure to properly analyze and weigh the NCDHHS's disability determination in accordance with Woods, the Commissioner argues that the ALJ "[r]eferenc[ed] the requirements of current [L]isting 12.05" and "explained that Plaintiff's impairments 'd[id] not cause . . . an extreme limitation of one, or marked limitation of two . . . areas of mental functioning.'" (Docket Entry 15 at 16 (quoting Tr. 24).) According to the Commissioner, "by acknowledging the different requirements between the 2014 version of [L]isting 12.05C on which the NCDHHS based its decision and those of the revised and applicable 2017 version, the ALJ provided a persuasive, specific, and valid reason for why the NCDHHS decision was not entitled to substantial weight in this case." (Id. at 17.) However, as Plaintiff argues, the ALJ's mere recitation of the current requirements of Listing 12.05 and her "statement that she disagreed

with the [NCDHHS's] listing finding does not cite to 'persuasive, specific, valid reasons for doing so that are supported by the record.'" (Docket Entry 12 at 12 (quoting <u>Woods</u>, 888 F.3d at 693).) The ALJ did not even discuss the facts on which the NCDHHS relied in reaching its disability determination, let alone "explain which aspects of [that] decision [s]he f[ound] not credible and why, describe why [s]he f[ound] other evidence more credible, and discuss the effect of any new evidence made available after NCDHHS issued its decision," <u>Woods</u>, 888 F.3d at 692. (<u>See</u> Tr. 24.)

In sum, the ALJ's failure to provide "persuasive, specific, valid reasons," <u>Woods</u>, 888 F.3d at 693, for rejecting the NCDHHS's disability determination warrants remand.

### 4. ME's Opinions

Plaintiff's fourth assignment of error asserts that "[t]he ALJ erred in her evaluation of the [] opinion [of ME Dr. Gross]." (Docket Entry 12 at 12 (bold font and single-spacing omitted).) More specifically, Plaintiff contends that "the ALJ faulted Dr. Gross for relying upon second hand knowledge of the results of [Plaintiff's] IQ testing and academic performance when [the ALJ] herself refused to exhibit those reports in the current record" and "failed to discuss the IQ testing to which Dr. Gross . . . referred . . . [as well as the other] relevant evidence bearing upon Listing 12.05B." (<u>Id.</u> at 14 (citing Tr. 23, 76-77).) Plaintiff's contentions establish reversible error.

Following the hearing, the ALJ requested Dr. Gross to offer
opinions regarding Plaintiff's mental functioning on a form
entitled "Medical Source Statement of Ability to Do Work-Related
Activities (Mental)" ("MSS") (see Tr. 389-90), which Dr. Gross
completed on March 8, 2017 (see Tr. 891-98; see also Tr. 393
(letter to ALJ from Plaintiff's hearing attorney agreeing with Dr.
Gross's conclusions)). On the MSS, Dr. Gross opined that
Plaintiff's mental impairments caused moderate limitation in his
ability to handle workplace changes (see Tr. 893), simple
instructions (see Tr. 892), and simple work-related decisions (see
id.), as well as marked limitation with regard to complex
instructions and decisions (see id.). Dr. Gross further observed
that "all psych assessments have established [Plaintiff] has memory
problems, concentration problems, 1st-2nd grade reading skills so
he can't fill out a job application [without] assistance, [and] was
unable to keep up work pace on past jobs." (Tr. 893.) In so
finding, Dr. Gross relied on the Willis VR assessment (see Tr. 530-
33) and the pre-hearing brief of Plaintiff's hearing attorney (see
Tr. 381-88), which "all establish [mental retardation] range IQs
and reading/math levels at 1st-2nd grade." (Tr. 892; see also Tr.
893 ("At least 4 psych evaluations have been completed all showing
IQs in the 60's.").) Dr. Gross went on to evaluate Plaintiff's
mental impairments under the 2017 version of Listing 12.05, and
found that Plaintiff suffered marked limitation in his abilities to

understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself; and mild limitation in his ability to interact with others, noting that "[s]everal psych evaluations establish[ed] valid IQs in the 60's, [and] significant academic limitations as [Plaintiff] is <u>illiterate</u>." (Tr. 895 (emphasis added).) Dr. Gross thus concluded that Plaintiff met the 2017 version of Listing 12.05B "as established by multiple IQ testings in the low 60's[,] [] scholastic achievement in the 2nd grade level[,] . . . [and] deficits in his ability to maintain employment." (Tr. 896.)

The ALJ discussed Dr. Gross's various opinions, and then analyzed and weighed those opinions as follows:

> The [ALJ] gives Dr. Gross'[s] opinion little weight as he did not examine [Plaintiff], and, per [Dr. Gross's] own handwritten explanation, he is basing his evaluation as to [Plaintiff's] meeting [L]isting 12.05(B) upon the representative brief and the opinion of [VR] Services, which is not an acceptable medical source and to which [Plaintiff] was self-referred. Finally, no other opinion evidence regarding mental functioning in this case limits [Plaintiff] to this extent.

(Tr. 23 (internal citations omitted).) None of the grounds supplied by the ALJ for rejecting Dr. Gross's opinions suffices.

As Plaintiff argues (<u>see</u> Docket Entry 12 at 14), the ALJ should not have discounted Dr. Gross's opinions for relying on the summarization of Plaintiff's educational background and IQ test scores in his hearing attorney's pre-hearing brief and in Willis's VR assessment, particularly given that the ALJ herself refused to

23

exhibit Plaintiff's actual school records.  More significantly, the ALJ did not give any reason to question the accuracy of the educational information or IQ scores summarized in the pre-hearing brief and Willis's VR assessment upon which Dr. Gross relied.  (See Tr. 23.)  Furthermore, the ALJ failed to explain why the fact that Plaintiff "was self-referred" to VR (id.) should have had any adverse impact on the degree to which Dr. Gross relied on Willis's opinions (see id.).  Moreover, the ALJ's remark that "no other opinion evidence regarding mental functioning in this case limit[ed] [Plaintiff] to th[e] extent [that Dr. Gross did]" (id.) only tells half the story because, although the NCDHHS's disability determination applied the prior version of Listing 12.05 (and thus a different version of Listing 12.05 than Dr. Gross applied), the NCDHHS found Plaintiff mentally disabled as of January 2014 (see Tr. 371).  Given the inadequacy of the above-discussed grounds for discounting Dr. Gross's opinions, the ALJ's rationale that Dr. Gross "did not examine" Plaintiff (Tr. 23) does not adequately support the ALJ's rejection of Dr. Gross's opinions, as that critique would defeat the purpose of engaging an ME to offer opinions based on a review of the record.

In light of the foregoing analysis, the Court should conclude that the ALJ's rationale for rejecting Dr. Gross's opinions constituted reversible error.

## 5. Appointments Clause

The recommendation to remand this matter for further administrative proceedings moots Plaintiff's fifth assignment of error alleging that, "at the time [the ALJ's] decision was issued, [her] appointment did not comply with the Appointments Clause" (Docket Entry 12 at 17 (bold font and single-spacing omitted)). "[O]n July 16, 2018[, Nancy A. Berryhill,] the [then-]Acting Commissioner of Social Security[,] ratified the appointments of [the SSA's] ALJs and approved those appointments as her own. On the same day, the Acting Commissioner took the same actions with respect to the administrative appeals judges (AAJs) who work at the Appeals Council." Social Security Ruling 19-1p, Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) on Cases Pending at the Appeals Council, 2019 WL 1324866, at *2 (Mar. 15, 2019) ("SSR 19-1p"). Thus, the SSA will have properly appointed any ALJ who presides over Plaintiff's post-remand administrative proceedings.

Plaintiff has requested "remand of th[is] matter for a new hearing with a different ALJ" (Docket Entry 12 at 19 (emphasis added)); however, Plaintiff has not provided the Court with any basis for requiring the SSA to assign a new ALJ to Plaintiff's case upon remand (see id.). Absent a showing of judicial bias, "'[t]o whom a case should be remanded is generally within the province of the [Commissioner's] responsibility.'" Lloyd v. Astrue, No. 5:09-

CV-292-FL, 2010 WL 2812672, at *2 (E.D.N.C. June 9, 2010) (unpublished) (quoting <u>Travis v. Sullivan</u>, 985 F.2d 919, 924 (7th Cir. 1993)), <u>recommendation adopted</u>, 2010 WL 2812674 (E.D.N.C. July 14, 2010) (unpublished). Nonetheless, "a number of courts have . . . <u>recommended</u> reassignment of [S]ocial [S]ecurity cases on remand for various reasons other than bias." <u>Sherman v. Berryhill</u>, Civ. No. 18-439 KK, 2019 WL 2450919, at *16 (D.N.M. June 12, 2019) (unpublished) (due to ALJ's "fail[ure] to consider the medical evidence with adequate care," recommending "that the Commissioner assign th[e] case to a different ALJ on remand," but "not requir[ing] the Commissioner to do so").

In the specific context of challenges to the authority of ALJs under the Appointments Clause, SSR 19-1p provides some guidance on the matter:

> The Appeals Council will grant [a] claimant's request for review in cases where the claimant: (1) [t]imely requests Appeals Council review of an ALJ's decision . . . issued before July 16, 2018; and (2) raises . . . (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision . . . .

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, AAJs who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision . . . . [T]he Appeals Council will conduct a new and independent review of the claims file and either remand the case to <u>an ALJ other than the ALJ who issued the decision under review</u>, or issue its own new decision . . . .

SSR 19-1p, 2019 WL 1324866, at *3 (emphasis added) (internal footnote omitted).  In light of the above-emphasized language in SSR 19-1p, the Court should "recommend[] that the Commissioner assign this case to a different ALJ on remand," but "not require the Commissioner to do so," Sherman, 2019 WL 2450919, at *16.

### III.  CONCLUSION

Plaintiff has established errors warranting remand.[10]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), with a suggestion that the Commissioner consider assigning a different ALJ to conduct the further administrative proceedings, and a directive that the further administrative proceedings shall include 1) incorporation of Plaintiff's school records as an exhibit in the administrative record, 2) reevaluation of Plaintiff's educational and literacy level based on consideration of his school records and other record evidence, 3) reevaluation and re-weighing of the NCDHHS's disability determination in accordance with Woods, the applicable

---

[10]  Plaintiff's Memorandum alternatively asks for "summary judgment with a reversal of the ALJ's decision for an award of benefits or with a remand of the matter for a new hearing with a different ALJ."  (Docket Entry 12 at 19.)  In this case, the Court should opt for remand, because Plaintiff's Memorandum does not adequately develop a cogent argument justifying reversal for an award of benefits (see id. at 17 (stating in conclusory fashion: "If not reversed for an award of benefits pursuant to Listing 12.05B with [Plaintiff's] marked limitations in the domains of concentration, persistence or pace and understanding, remembering or applying information, his having suffered from [intellectual disability] since he was a child and his IQ scores in the 60's, the claim must be remanded to address the[ ALJ's] errors." (internal citation omitted)).

regulations, and SSR 06-03p, and 4) reevaluation and re-weighing of Dr. Gross's opinions. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted in part, i.e., to the extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) should be denied.

__/s/ L. Patrick Auld__
**L. Patrick Auld**
**United States Magistrate Judge**

August 7, 2019